UNITED STATES, Appellee

v.

Michael E. FOSTER, Technical Sergeant
U.S. Air Force, Appellant.

No. 68,517.

CMR No. 29061.

U.S. Court of Military Appeals.

Argued Dec. 1, 1993.

Decided Aug. 19, 1994.

For Appellant: *Major George F. May* (argued); *Colonel Jay L. Cohen* (on brief); *Colonel Terry J. Woodhouse.*

For Appellee: *Colonel Jeffery T. Infelise* (argued); *Captain Jane L. Harless* (on brief); *Captain Jane M.E. Peterson* and *Captain David C. Wesley.*

*Opinion of the Court*

COX, Judge:

Appellant stands convicted, *inter alia*, of committing an indecent assault and an indecent act, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934.[1]

---

1. Appellant also was charged with, but was acquitted of, stealing one pair of ladies' underpants and unlawfully breaking and entering the barracks room of another with intent to commit sodomy, violations of Articles 121 and 129, Uniform Code of Military Justice, 10 USC §§ 921 and 929, respectively. Pursuant to his pleas, appellant was also convicted of disobeying a lawful order of a superior noncommissioned officer, and being incapacitated for performance of duties because of previous over indulgence in intoxicating liquor, in violation of Articles 91 and

Originally, appellant was charged with indecently assaulting Senior Airman M and, in a separate incident, forcibly sodomizing Airman KLT, in violation of Article 125, UCMJ, 10 USC § 925. Part I of this opinion relates only to the latter charge—the attack on Airman KLT.

## I

### Lesser-Included Offenses

The sodomy charge read: Appellant "[d]id, at Iraklion Air Station, Crete, Greece, on divers occasions on or about 26 June 1990, commit sodomy with Airman ... [KLT], by force and without the consent of the said Airman [KLT]." By exceptions and substitutions, the members found appellant guilty of "an indecent assault upon" Airman KLT, "a person not his wife, by taking off her shorts and underwear, pushing up her T-shirt and touching her breasts, and kissing around her genital area with intent to gratify his sexual desires," in violation of Article 134.

Pursuant to its authority under Article 66(c), UCMJ, 10 USC § 866(c), the Court of Military Review found that committing an indecent assault on Airman KLT was not a lesser-included offense of sodomy, but it found appellant was guilty of the less serious offense of committing an indecent act on her, also in violation of Article 134. 34 MJ 1264, 1267 (1992). Essentially, we are asked to review the Court of Military Review's findings to determine whether committing an indecent act is a lesser-included offense of forcible sodomy.[2] This requires us to consider the impact of *United States v. Teters,* 37 MJ 370 (CMA1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994),

on the meaning of "lesser-included offenses," as defined in Article 79, UCMJ, 10 USC § 879.

In *Teters,* we adopted the "elements test" for determining whether one offense was "multiplicious" with another for purposes of findings of guilt. 37 MJ at 377. We now adopt the same test for determining whether an offense is a lesser-included offense.

Article 79 provides the following regarding lesser-included offenses:

An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.

This language is "virtually identical to the language of Fed.R.Crim.P. 31(c)." 37 MJ at 375. The Supreme Court in *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), defined the term "necessarily included" as follows:

[O]ne offense is not "necessarily included" in another unless the *elements* of the lesser offense *are a subset* of the *elements* of the charged offense.

*Id.* at 716, 109 S.Ct. at 1450 (emphasis added). The Supreme Court reasoned:

We now adopt the elements approach to Rule 31(c).... [T]his approach is grounded in the language and history of the Rule and provides for greater certainty in its application. It, moreover, is consistent with past decisions of this Court which, though not specifically endorsing a particular test, employed the elements approach

---

134, UCMJ, 10 USC §§ 891 and 934, respectively. Appellant was sentenced to a bad-conduct discharge, confinement for 3 months, and reduction to pay grade E–1. The convening authority approved this sentence. The Court of Military Review substituted for the court-martial's findings with respect to Charge III a finding of guilty to committing an indecent act with another (34 MJ 1264, 1267 (1992)) and otherwise affirmed the findings and the sentence as adjudged below. *Id.* at 1268.

2. We granted review of the following issues:

### I
WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY SUBSTITUTING ITS FINDING OF GUILT TO COMMITTING INDECENT ACTS WITH ANOTHER FOR THE COURT–MARTIAL'S FINDING OF GUILT AS TO THE OFFENSE OF INDECENT ASSAULT.
### II
WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO GRANT THE DEFENSE MOTION TO SEVER.

in cases involving lesser included offense instructions.

*Id.* (footnote omitted).

Our adoption of this rule with respect to lesser-included offenses leaves unanswered a significant question in military jurisprudence that is not applicable to the construction of Fed.R.Crim.P. 31(c). Uniquely, under the Uniform Code of Military Justice, a member may be tried and convicted of offenses under the "general article," Article 134, UCMJ, 10 USC § 934. This general article proscribes unspecified disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces....

■ The general article has withstood challenges as to its constitutionality. *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Nevertheless, given the plain meaning of the statute, charges prosecuted under Article 134 require proof of at least one element not required for proof of offenses arising under Articles 80 through 132 of the Uniform Code, 10 USC §§ 880–932, respectively (the enumerated articles). Thus in applying the plain meaning of the "elements test" in *Schmuck* or *Teters,* not only would servicemembers be exposed to the possibility of multiple convictions for one criminal transaction, but also servicemembers would be denied the opportunity for instructions on lesser-included offenses in appropriate cases, simply because the lesser offense required proof of an element not formally included in the greater offense, *i.e.,* that the conduct was "to the prejudice of good order and discipline" or "of a nature to bring discredit upon the armed forces."

To avoid these incongruous results, we hold simply that, in military jurisprudence, the term "necessarily included" in Article 79 encompasses derivative offenses under Article 134. *See United States v. Doss,* 15 MJ 409, 415 (CMA1983) (Cook, J., concurring in the result) (prejudice to good order and discipline is a characteristic of all offenses under the Uniform Code; "it is merely a matter of historical accident that some offenses came

to be assigned separate articles without that element, while others continue to be charged with the element under the general article.").[3]

■ Thus we hold that an offense arising under the general article may, depending upon the facts of the case, stand either as a greater or lesser offense of an offense arising under an enumerated article. Our rationale is simple. The enumerated articles are rooted in the principle that such conduct *per se* is either prejudicial to good order and discipline or brings discredit to the armed forces; these elements are implicit in the enumerated articles. Although the Government is not required to prove these elements in an enumerated-article prosecution, they are certainly present.

■ One caveat, however, is in order. In order for a court-martial to convict a service-member of a lesser, general-article offense arising out of an enumerated-article charge, the Government must prove the extra element(s) beyond a reasonable doubt, as it must any other required element of proof. Further, it seems clear to us that sound practice would dictate that prosecutors plead not only the principal offense, but also any analogous Article 134 offenses as alternatives. The court-martial would then be instructed as to the required elements of each offense and would be further admonished that the accused could not be convicted of both offenses. If he were convicted of the greater offense, the members would simply announce no findings as to the lesser offense, and it would be dismissed.

### *Teters, et al., Applied*

■ How then are the *Teters, Schmuck;* and *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), "elements tests" applied to a particular case? What is meant by the phrase in *Schmuck,* "unless the elements of the lesser offense are a subset of the elements of the charged offense"? 489 U.S. at 716, 109 S.Ct. at 1450. Initially, one can logically conclude that, if

---

**3.** Under the Articles of War, all common-law felonies were prosecuted under the general arti-

cle. *See* W. Winthrop, *Military Law and Precedents* 720–21 (2d ed. 1920 Reprint).

proof of a greater offense proves all the elements of another offense and more, then the other offense is a "subset of the elements." Conversely, if proof of the "subset" is necessary to prove the greater offense, then the "elements test" is met.

■ The Manual for Courts–Martial itself provides the following examples of lesser-included offenses:

(a) All of the elements of the lesser offense are included in the greater offense, and the common elements are identical (for example, larceny as a lesser included offense of robbery);

(b) All of the elements of the lesser offense are included in the greater offense, but one or more elements is legally less serious (for example, housebreaking as lesser included offense of burglary); or

(c) All of the elements of the lesser offense are included and necessary parts of the greater offense, but the mental element is legally less serious (for example, wrongful appropriation as a lesser included offense of larceny).

Para. 2b(1), Part IV, Manual for Courts–Martial, United States, 1984. Thus, subset elements can be either quantitatively or qualitatively lesser. *See United States v. Schoolfield*, 40 MJ 132 (CMA 1994).[4]

This case presents an opportunity to apply the reasoning of *Teters* to the facts at bar. The sodomy charge arose on June 25, 1990, when Airman Basic Larson had a farewell party for Airman KLT, who was scheduled to leave the following day. During the party in Larson's dormitory room, Larson and Airman KLT consumed large amounts of alcohol. Appellant arrived at the party late and was the last one to leave. After the party, Larson and Airman KLT undressed, went to bed together in his room, and had sex. Later, Airman KLT felt sick, put on some clothes, and left Larson's room to go to the bathroom. In the hallway, she encountered appellant who helped her to the ladies' bathroom, then he took her to her own room in the same dormitory. Airman KLT awoke a while later to find appellant still in her room. She told him she was returning to Larson's room, and appellant walked her to that room. Airman KLT would not let appellant enter Larson's dorm room; but she failed to lock the door, and appellant returned several times.

The first time Airman KLT discovered appellant in the room, she had been asleep on a futon on the floor and awoke to find her pants and underwear removed and her shirt pushed up to her neck. Appellant was kissing her breasts. She told him to stop, and he left the room. Airman KLT awoke later, still nude, to find appellant with his hands on her breasts and his head between her legs. She thought he was performing oral sex on her. Again, she told him to stop. Airman KLT then got into bed with Larson and went to sleep. She awoke a last time to find appellant with his hands under the sheet fondling

---

4. Thus the bench and bar should not leap to the conclusion, however tempting, that all non-identical charges are invariably separate for all purposes. In addition to the guidance given herein, there are other doctrines relating to synonymous offenses, such as the "merger" doctrine, the "duplicious" doctrine, and the "mutually exclusive" doctrine. Needless to say, congressional intent remains paramount as to whether an accused may be punished for more than one offense in a given transaction or episode. *Ball v. United States*, 470 U.S. 856, 861, 865, 105 S.Ct. 1668, 1671, 1673, 84 L.Ed.2d 740 (1985) (convicted felon's possession of a firearm could not be punished under several statutes). This should give none of us pause for concern here.

There is another elementary concept of justice which none of us should forget, when one act of an accused violates several penal statutes. It is that there is prosecutorial discretion to charge the accused for the offense(s) which most accurately describe the misconduct and most appropriately punish the transgression(s). *See Ball v. United States*, 470 U.S. at 859, 105 S.Ct. at 1670 (the Government has broad discretion in selecting which charges to bring in a case). *United States v. Teters* notwithstanding, military judges must still exercise sound judgment to ensure that imaginative prosecutors do not needlessly "pile on" charges against a military accused. A fair result remains not only the objective, but indeed the justification of the military justice system. Under *Teters*-like guidance, 37 MJ 370 (CMA1993), *cert. denied*, ___ U.S. ___, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994), civilian judges have managed to accomplish these ends for years, with very few problems.

her. She told him to quit, and he left. *See* 34 MJ at 1265.

Before arguments and instructions on findings, trial counsel persuaded the military judge to instruct that indecent assault is a lesser-included offense of sodomy. The offense of committing indecent acts was not specifically instructed on.

To obtain a sodomy conviction, the Government was required to prove the following elements:

(1) That the accused engaged in unnatural carnal copulation with a certain other person or with an animal.

\* \* \*

(3) That the act was done by force and without the consent of the other person.

Para. 51b, Part IV, Manual, *supra.*

A key factual issue in appellant's trial was whether appellant's act rose to the level of "unnatural carnal copulation." The military judge defined this phrase for the court members in these terms:

A person commits unnatural 'carnal copulation' when that person takes into his mouth the reproductive organ of another person.

Penetration of the female sexual organs, however slight, is required to establish this offense.

*See* Art. 125; para. 51c.

■ To prove indecent assault—which the court-martial ultimately found—the Government did not have to prove penetration, but merely the following:

(1) That the accused assaulted a certain person *not the spouse of the accused* in a certain manner;

(2) That the acts were done with the intent to gratify the lust or sexual desires of the accused; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 63b, Part IV, Manual, *supra* (emphasis added).[5]

The elements of committing indecent acts, which the Court of Military Review later substituted, are:

5. The Court of Military Review grappled with the question of whether sodomy " 'expressly or by fair implication' contains an averment" of the non-spousal element of indecent assault. Ultimately concluding that it did not, the Court ruled that the sodomy specification "failed to place appellant on notice of the essential element of the lesser offense of indecent assault that the victim is not the spouse of the appellant." 34 MJ at 1267. As a practical matter, however, appellant could hardly have failed to be on notice that KLT was not his wife. The specification plainly alleged her full name, and, as appellant acknowledged during presentencing, he was legally married to another woman. This is not a question of whether he was so inebriated, incapacitated, or otherwise befuddled on the night in question as to not know whom he was assaulting. It is a matter of whether, in the cold, sober light of day, assisted by able counsel, appellant could appreciate that the Government was formally alleging that the victim was not his wife. Absent evidence that appellant was incompetent, we conclude that he was fully on notice that KLT was not his wife.

Whether the non-spousal element of indecent assault was "expressly or by fair implication" (*see* 34 MJ at 1266) included within the sodomy specification, where the sodomy specification fully identified the victim and she was, in fact, not the accused's wife, is arguably a closer question.

As the court below declined to approve findings of guilty of indecent assault, and as the legal sufficiency of such a specification is not before us, we will await the arrival of an actual case or controversy to decide that question.

We suspect, in any event, that the Court of Military Review's animus regarding the indecent-assault specification can at least partially be explained by its evident pique at the Government's sloppy handling of the case. As the court noted:

The sodomy specification before the court did not address the lack of a marital relationship between the appellant and the victim, and the government did not present proof of that relationship during its case-in-chief. The trial counsel discovered this deficiency just prior to the presentation of the findings argument and, with the permission of the military judge and over objection from the defense, reopened the government's case to enter a stipulation of fact that Amn KLT had never been the wife of appellant.

34 MJ at 1266.

As these procedural aspects are also not before us, and lie even more firmly within the sound discretion of the court below, Art. 66(c), UCMJ, 10 USC § 866(c), we decline to review the correctness of that court's decision to set aside the findings of indecent assault.

(1) That the accused committed a certain wrongful act with a certain person;

(2) That the act was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 90b, Part IV, Manual, *supra.*

Under the circumstances of this case, it is clear that, excluding the non-spousal component, the first two elements of indecent assault (of which the court members convicted appellant) amounted merely to a less serious sexual act than the first element of sodomy. *Cf. United States v. Schoolfield*, 40 MJ at 137. Similarly, the first two elements of committing indecent acts represent merely a less serious sexual act than that of indecent assault. Needless to say, the first two elements of the indecent acts offense represent a less serious sexual act than that of sodomy.

The instant case presents a situation somewhat different from that encountered in *Teters*. There, the accused was charged with larceny and forgery, violations of Articles 121 and 123, UCMJ, 10 USC §§ 921 and 923, respectively. A glance at the elements of those offense reveals conclusively that the elements of neither was derivable from or includable within elements of the other. *Compare* para. 46b *with* para. 48b, Part IV, Manual, *supra.* Rather, the claim in *Teters* was that the crimes were connected only in the sense that the perpetrator chose to forge the checks for the purpose of uttering them in order wrongfully to obtain the property of another. 37 MJ at 373. Following strict Supreme Court guidance, such alleged "means," "societal norms," or "insistent-flow-of-events" claims were thoroughly renounced in *Teters*. *See United States v. Burney*, 21 USCMA 71, 44 CMR 125 (1971); *United States v. Beene*, 4 USCMA 177, 15 CMR 177 (1954).

■ The instant case, however, requires a qualitative, not quantitative, approach. Para. 2b(1)(b) and (c), Part IV. Particularly with regard to assaultive and sexual crimes, there is often a hierarchy or matrix of options available to the accuser to address the same

criminal act. *E.g.*, attempted rape, Art. 80, UCMJ, 10 USC § 880; assault consummated by a battery (offensive touching), Art. 128, UCMJ, 10 USC § 928; assault with intent to commit rape or indecent assault, Art. 134. In these cases, it is usually obvious that Congress could not have intended multiple convictions and multiple punishment for the selfsame act. Thus, dismissal or resurrection of charges based upon "lesser-included" claims can only be resolved by lining up elements *realistically* and determining whether *each* element of the supposed "lesser" offense is *rationally* derivative of one or more elements of the other offense—and *vice versa*. At times, it may be necessary to plead offenses in the alternative.

■ In the instant case, we hold that the Court of Military Review did not err in finding the indecent-acts offense included within indecent assault, because the first two elements of the indecent acts offense are rationally included within indecent assault and, by extension, within sodomy. *See United States v. Harris*, 25 MJ 281, 282 (CMA1987) ("It would indeed be a tortured exercise in semantics to conclude that oral sodomy is not an indecent act."); *see also United States v. Henderson*, 34 MJ 174 (CMA1992). Thus, the indecent-acts offense is clearly a subset offense of sodomy.

Further, the third element of the indecent-acts offense is expressly included in the third element of indecent assault, and it is implicit in sodomy. *See* above. In addition, the court members were specifically instructed on this element regarding the offense of indecent assault, and they specifically found appellant guilty of that element. Therefore, the Court of Military Review did not err in finding prejudice to good order and discipline, etc., included within indecent assault and, by extension, sodomy.

■ Varying the theme, appellant also contends that the offense of which he was initially convicted (indecent assault) and of which he stands convicted (indecent acts) are so different from the one he was given notice to defend against (sodomy) that his conviction of the lesser offenses violates due pro-

cess. He notes the gravamen of his sodomy charge was cunnilingus, which is *per se* proscribed by the Uniform Code, whereas the key to the lesser offenses is their indecency. Since sexual acts are often not indecent if consented to by the recipient, *see United States v. Stocks*, 35 MJ 366, 367 (CMA1992) ("oral foreplay . . . without more, could not be criminally 'indecent' where the ultimate act of sexual intercourse was not illegal"), appellant argues that he was denied the notice and opportunity to prepare an adequate defense of consent to those lesser charges.

Unfortunately for appellant, he was charged with *forcible* sodomy, *i.e.*, "by force and without the consent of the said Airman [KLT]." Force and lack of consent, though not express elements of Article 125, are a sentence-enhancing element. Para. 51e(1), Part IV. Thus appellant was thoroughly on notice that lack of consent was in issue in the case, and he had ample incentive and opportunity to prepare such a defense. Had his defense been credible and accepted by the factfinders, appellant would never have been convicted of indecent assault. The factfinder's rejection of consent here is well supported by evidence of record, and appellant was not denied due process through conviction of an included offense.

▆ Finally, appellant contends that he was not fairly put on notice that he could be convicted of this particular lesser-included offense. Article 79 put him on notice, however. Moreover, because all of the elements of committing indecent acts are expressly or impliedly included within sodomy and indecent assault, he had the notice, incentive, and opportunity to present defenses to those elements.

We hold that the Court of Military Review did not err in reducing appellant's conviction to the lesser charge of committing indecent acts.

## II

### *Severance*

The second granted issue concerns appellant's assertion that the charges against him should have been tried separately. Appellant was charged with forcible sodomy and indecent assault on two different women 4 months apart, but both involved uninvited sexual intrusions on a female's body. The sodomy offense involved Airman KLT. Regarding the indecent assault, Senior Airman M testified that one night, when she had had too much to drink to drive to her off-base apartment, appellant offered to let her sleep in the spare bed in his room. Before Senior Airman M went to sleep, appellant kissed her. She explained she was not interested in him, suggested she might leave, and appellant apologized for kissing her. Senior Airman M fell asleep fully clothed. She later woke up to find appellant in bed with her, her blouse unbuttoned, her tank-top pushed up over her breasts, and her pants unbuttoned and unzipped. Appellant was behind her with his hands on her stomach, kissing her neck. Senior Airman M immediately left.

RCM 906(b)(10), Manual, *supra,* provides for the "[s]everance of offenses, but only to prevent manifest injustice." The discussion that follows that rule suggests that "[o]rdinarily, all known charges should be tried at a single court-martial." There is a *quid pro quo* for this rule—unitary sentencing by the court-martial.

Appellant argues that had the charges been severed, neither crime would have been admissible under Mil.R.Evid. 404(b), Manual, *supra,* in his court-martial for the other. We stated in *United States v. Curry*, 31 MJ 359, 375 (CMA1990), that the rules regarding admissibility of uncharged misconduct [under Mil.R.Evid. 404(b) ] do not become the primary test for severance. That remains as expressed in RCM 601(e)(2) and 906(b). However, when such evidence would be admissible, it becomes more difficult to conclude there is "manifest injustice," or "compelling," "clear," or "substantial" prejudice.

▆ For uncharged conduct to be admissible, it must tend to prove an issue in controversy, and its probative value must outweigh its potential for undue prejudice. *United States v. Rodriguez*, 31 MJ 150, 155 (CMA1990); *United States v. Reynolds*, 29 MJ 105, 111 (CMA1989). The Government

contends appellant's conduct with Airman KLT might have been admissible to rebut appellant's defense of Senior Airman M's consent or his mistake regarding her consent. This reasoning is flawed. One woman's lack of consent "has no tendency to prove that another woman did not consent." *United States v. Gamble*, 27 MJ 298, 304 (CMA1988), *quoting United States v. Woolery*, 5 MJ 31, 33 (CMA1978), *quoting Lovely v. United States*, 169 F.2d 386, 390 (4th Cir.1948). The Government additionally suggests appellant's conduct with Airman KLT might have been admissible at his court-martial for the indecent assault of Senior Airman M to show appellant acted to satisfy his lust or sexual desires. We are not persuaded that uncharged misconduct is probative of appellant's motive given the facts of this case. Moreover, admissibility of uncharged misconduct does not dispose of the severance issue.

 In his instructions on findings the military judge gave the following directive:

> Members, in looking at the offenses in this case, ... each offense charged must stand on its own. Proof of one offense carries with it no inference that an accused is guilty of another offense. The government has the burden of proving each and every element of each offense beyond that reasonable doubt.

This instruction reduced the risk of the spill-over effect that members would have considered evidence of one offense in determining appellant's guilt of another. *United States v. Hogan*, 20 MJ 71, 73 (CMA1985).

 Finally, our standard of review of the denial by the military judge of the severance motion is whether he abused his discretion. *United States v. Curry*, 31 MJ at 374. We hold that he did not. While it is true, as appellant argues, that the multiple charges might well spill over in the minds of reasonable court members, *United States v. Palac-*

*ios*, 37 MJ 366 (CMA1993); *United States v. Haye*, 29 MJ 213 (CMA1989); *United States v. Hogan, supra*, the joinder of these two charges did not prevent appellant from mounting a defense to each charge, separately and distinctly. Accordingly, we find no errors which prejudiced the substantial rights of appellant.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS concur.

SULLIVAN, Chief Judge (concurring in the result):

I agree with the result reached by the majority and generally with the path taken to reach that result. However, I must disassociate myself from any suggestion in the opinion that the proof introduced at trial determines the relationship of the offenses for purposes of Article 79, Uniform Code of Military Justice, 10 USC § 879. ("Initially, one can logically conclude that, if proof of a greater offense proves all the elements of another offense and more, then the other offense is a 'subset of the elements.' Conversely, if proof of the 'subset' is necessary to prove the greater offense, then the 'elements test' is met." 40 MJ at 143–44.)

In *United States v. Teters*, 37 MJ 370 (CMA1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994), we rejected the pleading-and-proof view of lesser-included offenses and focused on the statutory elements of the offense. *United States v. Schoolfield*, 40 MJ 132 (Sullivan, C.J.). *See generally United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). I am surprised to see it resurface here. *See United States v. Teters, supra* at 378–79 (Cox, J., concurring).