OPINION OF THE COURT
GONZALES, Judge:
Contrary to his pleas, the appellant was found guilty, by a military judge sitting as a general court-martial, of two specifications of rape, two specifications of sodomy, three specifications of indecent acts with a child, and three specifications of indecent assault, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934 (1988).[1] The convening authority approved the adjudged sentence consisting of a dishonorable discharge, confinement for thirty-two years, forfeiture of all pay and allowances, and reduction to Private E1.
Before this court the appellant asserts, inter alia, that the in-court testimony of the three children-victims was founded upon unreliable perceptions or memory caused by improper pretrial interrogation and investigative procedures. Therefore, he contends that he was entitled to a “taint” hearing where the government had to demonstrate by clear and convincing evidence that the suspect pretrial interrogation and investigation procedures did not “taint” the reliability of the children’s in-court testimony. He also asserts that the indecent acts were multiplicious for sentencing purposes with the indecent assaults. We disagree with the appellant’s first assertion, but agree that his second assertion requires relief,
I. Doctrine of Waiver
At the outset, we note that no motion or objection directly addressing the reliability of each victim’s in-court testimony was ever made during the trial. The failure to make such a motion or objection at trial waives the issue on appeal. Rules for Courts-Martial 801(g) and 905(e). We also note that when the trial defense counsel requested that the military judge view the five video tapes of the investigative interviews of each victim for impeachment purposes, he specifically stated twice that the defense was not asserting that the video tapes would show that the testimony of each victim was a fabrication. The military judge also observed:
In the defense counsel’s opening statement, and in the cross-examinations, the defense has brought out several inconsistencies that occurred during the prior interviews. But I have a problem whether or not he’s doing so based upon recent fabrication or an improper influence. The defense has indicated that the girls were trying to please the interviewers and they asked me to consider, in their opening statement, what influence the total number of interviews had on the children to include the interviews by the trial counsel.
So, I come down to the conclusion that the defense has stated there [are] inconsistencies, but not that the testimony has been invented by these individuals.
Therefore, under these circumstances, we hold that the doctrine of waiver, with respect to the first assignment of error, applies to this case.
II. Reliability of In-court Testimony
Assuming arguendo that waiver should not be applied, we are convinced that the pretrial interrogations and investigations had no effect on the reliability of any of the victims’ in-court testimony. Accordingly, no “taint” hearing was required to determine *726 whether the victims’ testimony should be admitted at trial.
The circumstances surrounding these offenses were first disclosed by one of the victims, SA, age 7, to her mother, Mrs. A. According to Mrs. A, on the evening of 11 June 1993, she was brushing SA’s hair when SA commented that she was glad that that day had been the last day of school, so she wouldn’t have to run past the appellant’s home anymore. Mrs. A asked her, “Why?”, and SA initially replied, “Oh, it’s a secret. I can’t tell you.” But when Mrs. A asked again, SA told her mother that it was “so she didn’t have to have sex with him anymore.” SA also told her mother that the appellant had “touched her private and that [the appellant] made her lick his private and that he licked her private.” Alarmed by this revelation, Mrs. A immediately took her daughter to the emergency room of Winn Army Community Hospital (WACH) at Fort Stewart, Georgia.
Miss Griffin, a psychologist with Social Work Services (SWS) at WACH, interviewed SA concerning her alleged sexual abuse for about twenty minutes. As the interview concluded, SA indicated that there was another victim when she asked Miss Griffin, to “please help her friend AK so that [the appellant] would not hurt [her] either.” AK was the appellant’s oldest daughter, who was six years of age. Based on what SA told her, Miss Griffin called AK’s mother, Mrs. Kibler, during the early morning hours of 12 June 1993, and asked her to bring AK to the hospital. She did so.
After Miss Griffin completed her initial interview with AK, Mrs. Kibler called Mrs. R, a good friend whose children Mrs. Kibler and the appellant had previously baby-sat on several occasions. Mrs. R testified that Mrs. Kibler told her that the appellant had been accused of molesting both SA and AK. Mrs. R then asked her oldest daughter, DH, age 7, if the appellant had ever touched her while she was at the appellant’s home. DH reacted with a “blood-curdling” scream and then admitted that the appellant had touched her “on her ‘puss’.” She proceeded to demonstrate how he had done so by sticking her hand into her pants. Mrs. R then took her daughter to the hospital.
The appellant relies on State v. Michaels, 136 N.J. 299, 642 A.2d 1372 (1994) for his contention that the use of coercive or highly suggestive interrogation techniques can create significant risk that interrogation itself will distort a child’s recollection of events, thereby undermining the reliability of statements and subsequent testimony concerning those events. The instant case differs from Michaels in that the government’s case did not consist of primarily the children’s testimony. Nor did the case against the appellant hinge solely on the information elicited from the investigatory interviews of the alleged victims by social workers and law enforcement investigators. More importantly, the government presented ample medical, physical, and behavioral evidence, which was absent in Michaels, to support each child’s contention that she had been molested.[2]
Although all three victims were thereafter questioned by SWS caseworkers, agents of the Criminal Investigation Command, and the trial counsel, the testimony of SA and DH at trial was materially the same as the details each initially reported to their mothers, Mrs. A and Mrs. R, respectively. Before Mrs. Kibler could be asked to recount at trial what AK told her, she was dismissed as a witness because on the advice of her counsel, she claimed her privilege against self-incrimination.
SA’s testimony was consistent with what she voluntarily first told her mother. SA testified, “He would kiss my private. He would make me kiss his private. He [would] rub my private and he did this more than once.” Also, in response to the question, “Did he ever put his private in your private?”, SA answered, ‘Yes.”
DH’s testimony was also in agreement with what she freely said and demonstrated when she was first questioned by her mother. DH testified, “He touch me on my private.”
*727 AK’s testimony was very similar to that of SA and DH. She acknowledged that her father touched her “private” with his “private” and that he put his “private” into her mouth. In response to the question, “Did you ever tell anybody about that?”, like SA and DH, AK replied that she had told her mother.
Comparing the statements that SA and DH willingly made to their mothers before they were taken to the hospital with their testimony at trial, we find that the intervening pretrial interrogations and investigations had no effect on the reliability of their in-court testimony. Additionally, we find that because AK was identified as a victim by SA and because AK likewise testified that she also told her mother about the appellant’s actions, the intervening pretrial interrogations and investigations also had no effect on the reliability of her in-court testimony. Although there were some minor inconsistencies between the children’s testimony at trial and their taped interviews, all three victims testified consistently during direct and cross-examination regarding the type of sexual abuse they suffered and their identification of the appellant as the abuser.
III. Lesser Included Offenses
The appellant also contends that the three specifications of indecent assault are multiplicious with the three specifications of indecent acts with a child for sentencing purposes. We believe that the proper issue is whether indecent assault is a lesser included offense of indecent acts with a child.[3] Where one offense is necessarily included within another offense, warranting dismissal of the lesser included offense, the issue is preserved on appeal despite the lack of objection at trial. United States v. Juarez, 37 M.J. 779, 780 (A.C.M.R.1993).
The Court of Appeals for the Armed Forces [hereinafter Court of Appeals] adopted the “elements test” from Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), to determine whether one offense is multiplicious with another offense for purposes of findings of guilt. United States v. Teters, 37 M.J. 370, 377 (C.M.A.1993), cert, denied, — U.S.-, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994). The Court of Appeals subsequently adopted this same test for determining whether an offense is a lesser included offense. United States v. Foster, 40 M.J. 140, 142 (C.M.A.1994). If proof of a greater offense proves all of the elements of another offense and more, then the other offense is a “subset of the elements” of the greater offense and, thus, a lesser included offense. Id. at 144. Dismissal of charges based upon the lesser-included “elements test” is warranted when each and every element of the supposed lesser offense is “rationally derivative” of one or more elements of the other offense. Id. at 146.
To obtain a conviction for indecent assault, the government is required to prove:
(1) That the accused assaulted a certain person not the spouse of the accused in a certain manner;
(2) That the acts were done with the intent to gratify the lust or sexual desires of the accused; and
(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Manual for Courts-Martial, United States, (1984 edition), Part IV, para. 63b [hereinafter MCM, 1984].
To prove the more serious sexual offense of indecent acts with a child,[4] the government is required to prove:
*728 (1) That the accused committed a certain act upon or with the body of a certain person;
(2) That the person was under 16 years of age and not the spouse of the accused;
(3) That the act of the accused was indecent;
(4) That the accused committed the act with the intent to arouse, appeal to, or gratify the lust,'passions, or sexual desires of the accused, the victim, or both; and
(5) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
MCM, 1984, Part IV, para. 87b(1).
In lining up the elements of these two offenses, it is clear that the first element of indecent assault is rationally derivative of the first three elements of indecent acts with a child. The second element of indecent assault is similar to the fourth element of indecent acts with a child. Furthermore, the third element of indecent assault is identical to the fifth element of indecent acts with a child. Indecent assault, however, does not require a showing that the victim was a child under 16 years of age or that the assault was necessarily indecent.[5] See United States v. Hoggard, 43 M.J. 1, 3 (1995).
Applying the “rationally derivative” approach encouraged by Foster, we find that all of the elements of indecent assault are a “subset of the elements” of indecent acts with a child. Accordingly, although not listed in paragraph 87d of Part TV of the Manual, we hold that indecent assault is a lesser included offense of indecent acts with a child.[6]
IV. Ineffective Assistance of Counsel
We also have considered the remaining assignment of error and those personally raised by the appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A. 1982), and hold that they are without merit.
We specifically reviewed with great care the appellant’s personal claim that he was denied effective assistance of counsel before and during his court-martial.
A trial defense counsel enjoys a strong presumption in law that he has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); United States v. Scott, 24 M.J. 186 (C.M.A.1987). .
In order to prevail on such a claim on appeal, the appellant has the heavy burden of overcoming the presumption of effectiveness. The allegation must clearly explain the exact manner in which the trial defense counsel was ineffective so that the government and this court may sensibly evaluate it. United States v. Jones, 39 M.J. 815, 817 (A.C.M.R. 1994), pet. denied, 41 M.J. 74 (C.M.A.1994); United States v. Crum, 38 M.J. 663 (A.C.M.R.1993), aff'd, 43 M.J. 230 (1995). Then, the appellant must present enough credible evidence, which, when considered together with the evidence contained in the entire appellate record, establishes two elements:
First, the [appellant] must show that the counsel’s performance was deficient.
This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed under the Sixth Amendment. Second, the [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable.
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
The test of counsel’s performance is not that he lost; and, it is not that some number of options were not pursued or could have been pursued differently — without regard to the degree of utility or the potential *729 hazard of each. United States v. Ingham, 42 M.J. 218 (1995). The benchmark for judging any claim of ineffectiveness is whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).
If this court determines that the presumption of effectiveness has not been overcome by the appellant’s showing, the issue may be disposed of without intruding further into the attorney-client relationship by requiring rebuttal affidavits from trial defense counsel. See United States v. Lewis, 42 M. J. 1, 6 (1995); Jones, 39 M.J. at 818 n. 5; United States v. Sittingbear, 42 M.J. 750 (Army Ct.Crim.App.1995).
Applying the Lewis standard to the appellant’s threshold claim of ineffective assistance of counsel, we find that the appellant has failed to meet his heavy burden of showing that his trial defense counsel’s performance was marred by “serious incompetency” that affected the trial result. Accordingly, the strong presumption that his trial defense counsel rendered professionally competent assistance and made all significant decisions in the exercise of reasonable professional judgment prevails. Strickland, 466 U.S. at 689-690, 698-700, 104 S.Ct. at 2065-66, 2070-71; Scott, 24 M.J. at 188.
V. Decision
The findings of guilty of the Additional Charge and its Specifications are set aside and the Additional Charge and its Specifications are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for twenty-nine years, forfeiture of all pay and allowances, and reduction to Private El.
Senior Judge EDWARDS and Judge RUSSELL concur.

. The appellant was charged with, but found not guilty of, three specifications of rape, five specifications of indecent acts with a child, and five specifications of indecent assault.

. Another difference between the instant case and Michaels is that the defense in Michaels specifically raised the issue of improper suggestibility by interviewers of the children during the investigation phase in a pretrial motion that was subsequently denied.

. We know that indecent acts with another is a lesser included offense of both indecent assault and indecent acts with a child. United States v. Foster, 40 M.J. 140, 147 (C.M.A.1994); Manual for Courts-Martial, United States, 1984, Part IV, paras. 63d(2) and 87d(1). Our focus is on the relationship between indecent assault and indecent acts with a child.

. We conclude that indecent acts with a child is more serious than indecent assault, in part, because enhanced punishment is provided when the victim is a child. The maximum period of confinement for indecent assault is limited to five years, while the maximum period of confinement for indecent acts with a child is seven years.

. In this case, the acts committed upon children under 16 years of age were also indecent. See United States v. Strode, 43 M.J. 29, 32 (1995).

. Specific lesser included offenses are listed for each offense discussed in Part IV of the Manual for Courts-Martial, but the lists are not all-inclusive. MCM, 1984, para. 3b(4).