**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman DEMARRIUS R. JEFFERS**
**United States Air Force**

**ACM 38664**

**28 October 2015**

Sentence adjudged 10 June 2014 by GCM convened at Aviano Air Base, Italy. Military Judge: Christopher F. Leavey (arraignment) and Dawn R. Efflein (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 24 months, and reduction to E-1.

Appellate Counsel for the Appellant: Captain Johnathan D. Legg and Captain Michael A. Schrama.

Appellate Counsel for the United States: Major Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

Appellant was tried at a general court-martial before a military judge alone. In accordance with his pleas, he was found guilty of drunken operation of a vehicle resulting in personal injury, involuntary manslaughter, reckless endangerment, and negligent homicide, in violation of Articles 111, 119, and 134, UCMJ, 10 U.S.C. § 911, 919, 934. The adjudged sentence consisted of a bad-conduct discharge, 2 years and 6 months confinement, and reduction to E-1. In accordance with a pretrial agreement, the

convening authority reduced confinement to 24 months and approved the remainder of the sentence as adjudged.

Before us, Appellant argues that his conviction of negligent homicide must be dismissed in light of his conviction of involuntary manslaughter for the same misconduct. We agree.

*Background*

Late in the evening of 1 June 2013, Appellant drove himself and a friend, Airman First Class (A1C) DF, to a club about an hour from the overseas base to which they were assigned. After drinking and socializing until about 0200 the following morning, they drove to a second club closer to base where they engaged in more drinking. Shortly before 0500, Appellant and A1C DF left the second club. By this time both individuals were quite drunk. Nevertheless, the two drove away with Appellant behind the wheel of his car and A1C DF in the passenger seat.

Shortly thereafter, Appellant was driving on a two-lane highway at about twice the posted speed limit of 50 kilometers per hour. As he approached an intersection, Appellant steered into the lane of oncoming traffic. In doing so, Appellant nearly hit a car driven by Mrs. KL—the spouse of an Air Force member—who managed to avoid a head-on collision only by swerving into the lane of traffic Appellant's car should have occupied.

After narrowly missing the vehicle of Mrs. KL, Appellant's car ran off the road, knocked over a light pole, and continued its trajectory. The car then tore through a wire fence and crashed into several cars in a parking lot. Passersby dragged the dazed Appellant from his vehicle but, before they realized his passenger was also in the car, it burst into flames.

A1C DF was subsequently pronounced dead at the scene. Appellant was taken to the hospital, where he was treated for third-degree burns to his legs and lacerations to his legs, face, and head. Appellant's blood was drawn about 90 minutes after the accident. Testing by the local hospital indicated 0.189 grams of alcohol per 100 milliliters of blood, while subsequent testing by the Armed Forces Medical Examiner System (AFMES) indicated a blood alcohol level of 0.180.

*Multiple Offenses*

Appellant's convictions of both involuntary manslaughter and negligent homicide are based upon the death of A1C DF. Appellant argues that both convictions for the same death cannot stand, and his conviction for negligent homicide must therefore be dismissed.

*A. Waiver*

In the present case, Appellant entered into a pretrial agreement containing a "waive all waivable motions" provision. When the military judge asked what motions would have been raised absent that provision, trial defense counsel stated he would have raised a claim of unreasonable multiplication of charges with regard to the offenses of involuntary manslaughter and negligent homicide. The military judge then discussed this possible motion with Appellant, who affirmed that he wished to give up this motion in order to obtain the benefit of his pretrial agreement.

In *United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009), our superior court held that a "waive all waivable motions" provision waived, rather than forfeited, a claim of multiplicity on appeal and therefore the multiplicity claim was extinguished and could not be raised on appeal. The court held multiplicity was waived because the pretrial agreement required the appellant to waive all waivable motions, the military judge conducted a thorough inquiry to ensure the appellant understood the effect of this provision, and the appellant explicitly indicated his understanding that he was waiving the right to raise any waivable motion. *Id.* The court also stated the same position would result for claims of unreasonable multiplication of charges raised on appeal. *Id.*

Ordinarily, an affirmative waiver of a claim of multiplicity and unreasonable multiplication of charges would end our inquiry. As we recently held, however, Article 66(c), 10 U.S.C. § 866(c), empowers the service courts to consider claims of multiplicity or unreasonable multiplication of charges even when those claims have been waived. *United States v. Chin,* ACM 38452 (recon) (A.F. Ct. Crim. App. 12 June 2015) (unpub. op.). In *Chin,* we declared, "Notwithstanding *Gladue*, under Article 66(c), UCMJ, this court may affirm only such findings of guilty and sentence as we 'find[] correct in law and fact and determine[], on the basis of the entire record, should be approved.'" *Id.* (alterations in original) (quoting *United States v. Rivera*, Army 20130397, unpub. op. at 3 (Army Ct. Crim. App. 15 December 2014) (quoting *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001)). Our position in *Chin* is consistent with *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991), in which our superior court held that a service court need not apply waiver or plain error review in the interest of justice. *See also United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990) (holding that a military court of criminal appeals has "awesome, plenary, *de novo* power of review . . . to, indeed, 'substitute its judgment' for that of the military judge" and need not apply deferential standards of review when it deems such deference inappropriate).

Because of the unreasonable multiplication of charges so plainly presented in this case, we elect to exercise our plenary, de novo power of review to consider whether convictions for both involuntary manslaughter and negligent homicide should be approved.

*B. Multiplicity and Unreasonable Multiplication of Charges*

We review claims of multiplicity and unreasonable multiplication of charges de novo. *United States v. Paxton*, 64 M.J. 484, 490–91 (C.A.A.F. 2007). In the context of multiplicity and unreasonable multiplication of charges, three concepts may arise: multiplicity for purposes of double jeopardy, unreasonable multiplication of charges as applied to findings, and unreasonable multiplication of charges as applied to sentence.

Multiplicity in violation of the Double Jeopardy Clause of the Constitution[1] occurs when "a court, contrary to the intent of Congress, imposes multiple convictions and punishments under different statutes for the same act or course of conduct." *United States v. Anderson*, 68 M.J. 378, 385 (quoting *United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006)) (emphasis omitted). Accordingly, an accused may not be convicted and punished for two offenses where one is necessarily included in the other, absent congressional intent to permit separate punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993); *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015). The Supreme Court laid out a separate elements test for analyzing multiplicity issues: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly, multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564. Where one offense is necessarily included in the other under the separate elements test, legislative intent to permit separate punishments may be expressed in the statute or its legislative history, or "it can also be presumed or inferred based on the elements of the violated statutes and their relationship to each other." *Teters*, 37 M.J. at 376–77.

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). Our superior court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?

---

[1] U.S. CONST. amend. V.

(2) Is each charge and specification aimed at distinctly separate criminal acts?

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001) (citation and internal quotation marks omitted). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). In a case where the *Quiroz* factors indicate the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Quiroz*, 55 M.J. at 339.

In the present case, Appellant's convictions for involuntary manslaughter and negligent homicide are not multiplicious. In applying the separate elements test to these two offenses, our superior court has concluded, "[N]egligent homicide under Article 134, UCMJ, is not [a lesser included offense] of involuntary manslaughter under Article 119, UCMJ." *United States v. McMurrin*, 70 M.J. 15, 18 (C.A.A.F. 2011). And we ourselves have declared, "We do not find [involuntary manslaughter and negligent homicide] multiplicious in findings, because each provision requires proof of a fact which the other does not." *United States v. Lovely*, 73 M.J. 658, 678 n.7 (A.F. Ct. Crim. App. 2014) (citing *Blockburger*, 284 U.S. at 304).

Thus, we turn to whether convictions for both involuntary manslaughter and negligent homicide amount to an unreasonable multiplication of charges—and conclude that they do.

In *United States v. Wickware*, ACM 38074 (A.F. Ct. Crim. App. 10 October 2013) (unpub. op.), we confronted a multiplicity and unreasonable multiplication of charges claim based on A1C Wickware's convictions for unpremeditated murder, involuntary manslaughter, and negligent homicide in the death of his infant son. We affirmed and rejected claims of multiplicity and unreasonable multiplication of charges, reasoning that because the military judge merged the offenses for purposes of sentencing, A1C Wickware did not suffer any prejudice. *Id.* unpub. op. at 28. In a summary disposition on appeal, however, our superior court set aside the findings of guilty and dismissed the involuntary manslaughter and negligent homicide offenses. *United States v. Wickware*, 73 M.J. 350 (C.A.A.F. 2014) (mem.).

Similarly, in *United States v. Sauk*, 74 M.J. 594 (A.F. Ct. Crim. App. 2015), we affirmed the finding of guilty for involuntary manslaughter, but set aside and dismissed Technical Sergeant Sauk's convictions for negligent homicide, aggravated assault, and assault in causing the death of his infant son.[2]

Conducting a *Quiroz* analysis in the case at bar, we conclude that involuntary manslaughter and negligent homicide constitute an unreasonable multiplication of charges. We note in particular that the two charges are not aimed at distinctly separate criminal acts but address a single act of Appellant in causing the death of A1C DF. Under the totality of the circumstances, this charging scheme grossly exaggerates Appellant's criminality. Pursuant to our broad Article 66(c), UCMJ, authority, we find that Appellant's conviction for negligent homicide should not be approved.

*Sentence Reassessment*

Having found Appellant's convictions for involuntary manslaughter and negligent homicide constitute an unreasonable multiplication of charges warranting dismissal of the latter charge, we must consider whether we can reassess the sentence or whether this case should be returned for a sentence rehearing. We are confident we can accurately reassess Appellant's sentence.

This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.A.A.F. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

In the present case, dismissing the conviction for negligent homicide reduces the maximum length of confinement from 15 years and 6 months to 12 years and 6 months.[3]

---

[2] In reaching the decisions in *Sauk* and *Wickware*, both we and our superior court, respectively, found that the offenses at issue had been charged in the alternative. *United States v. Sauk*, 74 M.J. 594, 601 (A.F. Ct. Crim. App. 2015); *United States v. Wickware*, 73 M.J. 350 (C.A.A.F. 2014) (mem.). The Government appears to have engaged in alternate charging in the present case as well. For, in examining the record in its entirety, we conceive no other legitimate purpose for charging Appellant with two homicides in the same death.

[3] The military judge considered the offenses "as one offense for sentencing purposes" and calculated the maximum punishment to be "12 years and six months of confinement."

There is no dramatic change to the maximum penalty landscape and, in light of the 24-month confinement limit in the pretrial agreement, there is no difference in the actual penalty exposure. The remaining offenses—drunken operation of a vehicle resulting in personal injury, involuntary manslaughter, and reckless endangerment—capture the gravamen of the criminal conduct. The forum was military judge alone and thus we are "more likely to be certain of what a military judge would have done." *Id.* at 16. This court has experience and familiarity with determining fair and appropriate sentences for this type of offense. We are confident that, absent the conviction for negligent homicide, the military judge would have imposed the same sentence. Having so found, we reassess Appellant's sentence to the same sentence that was approved by the convening authority: a bad-conduct discharge, confinement for 24 months, and reduction to E-1.

## *Conclusion*

The findings of guilty as to the Additional Charge and its Specification are set aside and dismissed. The remaining findings, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court