UNITED STATES, Appellee

v.

Steven L. JONES, Airman
U.S. Air Force, Appellant

No. 09-0271

Crim. App. No. 36965

United States Court of Appeals for the Armed Forces

Argued November 9, 2009

Decided April 19, 2010

RYAN, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN and STUCKY, JJ., joined.  BAKER, J., filed a
separate dissenting opinion.


Counsel

For Appellant:  Captain Reggie D. Yager (argued); Major Michael
A. Burnat (on brief); Major Lance J. Wood and Major Shannon A.
Bennett.

For Appellee:  Captain Michael T. Rakowsi (argued); Colonel
Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and
Gerald R. Bruce, Esq. (on brief).


Military Judge:  Gordon R. Hammock


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

In this case, Appellant was charged with rape in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006).  The military judge sua sponte instructed on, and the members convicted Appellant of, an uncharged violation of Article 134, UCMJ, 10 U.S.C. § 934 (2006) -- indecent acts with another (indecent acts), presented as a lesser included offense (LIO).  No one disagrees that the elements of indecent acts and rape are not the same,[1] and the MCM does not list indecent acts as an LIO of rape.  However, indecent acts is listed in the MCM as an LIO of indecent assault, MCM, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007 app. 27 at A27-2 (2008 ed.); MCM pt. IV, para. 63.d(2) (2005 ed.), which in turn is listed as an LIO of rape, MCM, Punitive Articles Applicable to Sexual Assault Offenses Committed Prior to 1 October 2007 app. 27 at A27-2 (2008 ed.); MCM pt. IV, para. 45.d(1)(c) (2005 ed.).  Further, indecent acts was held to itself be an LIO of

---

[1] Compare Manual for Courts-Martial, United States pt. IV, para. 90(b) (2005 ed.) (MCM) (listing the elements of indecent acts as:  "(1) That the accused committed a certain wrongful act with a certain person; (2) That the act was indecent; and (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces"), with MCM pt. IV, para. 45.b(1) (2005 ed.) (listing the elements of rape as:  "(1) That the accused committed an act of sexual intercourse; and (2) That the act of sexual intercourse was done by force and without consent").

2

rape in United States v. Schoolfield, 40 M.J. 132 (C.M.A. 1994), on the grounds that the elements of the two offenses -- while different -- were related, and that "although indecent acts requires a service disorder or discrediting circumstances, such an element is included by implication in Article 120." Id. at 137 (citing United States v. Foster, 40 M.J. 140, 143 (C.M.A. 1994), overruled in part by United States v. Miller, 67 M.J. 385, 388-89 (C.A.A.F. 2009)).

This case, then, presents the question, not expressly answered in our recent cases, whether an offense is "necessarily included" in, a subset of, or an LIO of a charged "greater" offense when it has no elements in common with the elements of the charged offense but is nonetheless either listed as an LIO in the MCM or has been held by this Court to be an LIO on some other ground. See United States v. McCracken, 67 M.J. 467, 468 n.2 (C.A.A.F. 2009). We answer this question in the negative and reverse that portion of the decision of the United States Air Force Court of Criminal Appeals (CCA).[2]

---

[2] We granted the following issue:

> WHETHER APPELLANT'S CONVICTION FOR INDECENT ACTS WITH ANOTHER MUST BE SET ASIDE BECAUSE THE MILITARY JUDGE ISSUED ERRONEOUS AND MISLEADING INSTRUCTIONS SUPPORTING INDECENT ACTS AS AN AVAILABLE LESSER-INCLUDED OFFENSE TO THE ORIGINAL RAPE CHARGE AND THE RESULTING CONVICTION UNDER CHARGE I AND ITS SPECIFICATION AMOUNTED TO A FATAL VARIANCE.

## I.  Facts

While stationed at Incirlik Air Base, Turkey, Appellant engaged in various activities that resulted in him being charged with failure to go to his place of duty, rape, forcible sodomy, purchasing alcohol for minors, and dishonorably failing to maintain sufficient funds in his checking account, in violation of Articles 86, 120, 125, and 134, UCMJ, 10 U.S.C. §§ 886, 920, 925, 934 (2006).  When instructing on the rape charge (Charge I), the military judge also instructed the members on the offense of indecent acts:  "When you vote, if you find the accused not guilty of the offense charged, that is, rape, then you should next consider the lesser included offense of indecent acts with another in violation of Article 134."  After listing the elements of indecent acts, the military judge defined the term "indecent act" and explained the circumstances under which an accused could be convicted of the offense.  Before reading the instructions to the members, the military judge gave the defense the opportunity to object to this instruction.  The defense did so, but its objection focused only on whether the facts of the case were "r[aised] to that level"; defense counsel explicitly agreed that indecent acts "[a]s a general concept" could be an LIO of rape.  The military judge never formally ruled on the objection, but he did ultimately give the indecent acts instruction.  After the military judge read the

4

instructions to the members, he asked both parties whether they objected to the instructions given or requested any additional instructions.  Both parties responded in the negative.

The members convicted Appellant of all the charges and specifications under consideration but one:[3]  Instead of rape, Appellant was convicted of indecent acts, as instructed upon by the military judge as an LIO.  Appellant was sentenced to a reduction to the grade of E-1, forfeiture of all pay and allowances for eighteen months, confinement for eighteen months, and a bad-conduct discharge.  The convening authority reduced the forfeitures and confinement to fifteen months but otherwise approved the adjudged sentence.  The CCA affirmed the findings and sentence.  United States v. Jones, No. ACM 36965, 2008 CCA LEXIS 484, at *25, 2008 WL 4898569, at *8 (A.F. Ct. Crim. App. Oct. 22, 2008).

## II.  Discussion

The question presented in this case implicates constitutional due process imperatives of notice, see United States v. Medina, 66 M.J. 21, 26-27 (C.A.A.F. 2008), the text of Article 79, UCMJ, 10 U.S.C. § 879 (2006), and the legislative prerogative to delineate the parameters of federal criminal offenses, see Liparota v. United States, 471 U.S. 419, 424

---

[3] One specification of dishonorably failing to maintain sufficient funds in his checking account was thrown out post-arraignment pursuant to Rule for Courts-Martial (R.C.M.) 917.

5

(1985).

The due process principle of fair notice mandates that "an accused has a right to know what offense and under what legal theory" he will be convicted; an LIO meets this notice requirement if "it is a subset of the greater offense alleged." Medina, 66 M.J. at 26-27. If indeed an LIO is a subset of the greater charged offense, the constituent parts of the greater and lesser offenses should be transparent, discernible ex ante, and extant in every instance. While people are presumed to know the law, e.g., Atkins v. Parker, 472 U.S. 115, 130 (1985), they can hardly be presumed to know that which is a moving target and dependent on the facts of a particular case.

And it is for Congress to define criminal offenses and their constituent parts. Liparota, 471 U.S. at 424. One offense either is or is not an LIO, necessarily included in another offense.

While it has been said that "[t]he question of what constitutes a lesser-included offense [in the military justice system] . . . is a Hydra," United States v. Weymouth, 43 M.J. 329, 342 (C.A.A.F. 1995) (Crawford, J., concurring in the result), rather than embracing a "Hydra" we return to the elements test, which is eminently straightforward and has the added appeal of being fully consonant with the Constitution, precedent of the Supreme Court, and another line of our own

cases.  See infra Part II.A.

A.

"The Constitution requires that an accused be on notice as to the offense that must be defended against, and that only lesser included offenses that meet these notice requirements may be affirmed by an appellate court."  Miller, 67 M.J. at 388 (citing Jackson v. Virginia, 443 U.S. 307, 314 (1979); In re Winship, 397 U.S. 358, 364 (1970); Cole v. Arkansas, 333 U.S. 196, 201 (1948)).  The importance of defining LIOs in this context cannot be understated, as an accused may be convicted of uncharged LIOs precisely because they are deemed to have notice, Medina, 66 M.J. at 27, and military judges must instruct the members on LIOs reasonably raised by the evidence, United States v. Miergrimado, 66 M.J. 34, 36 (C.A.A.F. 2008).

The statutory authority for affirming an LIO rather than the facially charged offense derives from Article 79, UCMJ:  "An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein."  Earlier in this Court's history, this Court -- relying on its own precedent and the commentary to Article 79, UCMJ[4] --

---

[4] See MCM ch. XXVIII, para. 158 (1968 ed.) (Discussion to Article 79, UCMJ) ("An included offense exists when a specification contains allegations, which are sufficient, either expressly or by fair implication, to put the accused on notice that he must

7

interpreted the "necessarily included" language in Article 79,

UCMJ, out of the statute.  Thus, while Article 79, UCMJ,

unquestionably contains the words "necessarily included," this

Court in United States v. Virgilito, 22 C.M.A. 394, 47 C.M.R.

331 (1973), stated:

> This Court has applied a liberal standard in determining whether an offense is lesser included in one that is charged.  It has rejected the notion that the lesser offense must necessarily be included in the greater. The basic test to determine whether the court-martial may properly find the accused guilty of an offense other than that charged is whether the specification of the offense on which the accused was arraigned alleges fairly, and the proof raises reasonably, all elements of both crimes so that they stand in the relationship of greater and lesser offenses.
>
> . . . .
>
> The question respecting the allegations is whether they fairly embrace the elements of the lesser offense and thus give adequate notice to the accused of the offenses against which he must defend.

Id. at 395-96, 47 C.M.R. at 332-33 (emphasis added) (quotation

marks and citation omitted) (citing and quoting United States v.

Thacker, 16 C.M.A. 408, 410, 37 C.M.R. 28, 30 (1966); citing

---

be prepared to defend against it in addition to the offense specifically charged.  This requirement of notice is met when the elements of the included offense are necessary elements of the offenses charged . . . . Also, this requirement of notice, depending on the allegations in the specification of the offense charged, may be met although an included offense requires proof of an element not required in the offense specifically charged, for example, assault in which grievous bodily harm is intentionally inflicted may be included in assault with intent to murder, although the actual intentional infliction of bodily harm required in the former is not an element of the latter.").

United States v. McVey, 4 C.M.A. 167, 15 C.M.R. 167 (1954));
accord McVey, 4 C.M.A. at 175, 15 C.M.R. at 175 (Brosman, J.,
concurring in the result) ("Traditionally this Court has worn an
outsize pair of spectacles in viewing the problem of lesser
included offenses, and has applied an extremely generous
standard in determining whether a related offense is included
within the principal one.  I am sure of the overall soundness of
this policy.").  Under these loose theories -- whose
difficulties of application did not escape criticism[5] -- whether
and when offense X was an LIO of offense Y depended on
subjective judgments as to whether the elements of one offense
were "close enough" to altogether different elements of another
offense.

　　Later, in Schmuck v. United States, 489 U.S. 705 (1989),
the Supreme Court analyzed Fed. R. Crim. P. 31(c)[6] -- whose

---

[5] See, e.g., United States v. Zupancic, 18 M.J. 387, 391-93
(C.M.A. 1984) (Cook, S.J., concurring in part and dissenting in
part) (criticizing the majority's expansion of the "traditional
notion" of LIOs -- where "each element of one offense fits
either directly or by reasonable implication into some element
of another offense" -- to include offenses "which, in their
estimation, are 'fairly embraced' by the allegations relating to
another charge"; cataloging inconsistencies found in the Court's
caselaw resulting from "the myriad, fickle rules propounded by
this Court, in light of my Brothers' failure to follow even
their own dictates") (footnotes omitted).
[6] "The defendant may be found guilty of an offense necessarily
included in the offense charged or of an attempt to commit
either the offense charged or an offense necessarily included
therein if the attempt is an offense."  The current version --

language at that time was almost identical to Article 79, UCMJ -- and adopted the "elements" test, holding that "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)." Id. at 716. Analyzing the requirement of "necessary inclusion of lesser offense in the greater," the Supreme Court noted:

> While the elements test is true to this requirement, the inherent relationship approach[7] dispenses with the required relationship of necessary inclusion: the inherent relationship approach permits a lesser included offense instruction even if the proof of one offense does not invariably require proof of the other as long as the two

which in 2002 was reworded in a stylistic, non-substantive way, see Fed. R. Crim. P. 31(c) advisory committee's note -- reads:

> A defendant may be found guilty of any of the following:
>
> (1) an offense necessarily included in the offense charged;
> (2) an attempt to commit the offense charged; or
> (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right.

[7] This approach was formulated in United States v. Whitaker, 447 F.2d 314 (D.C. Cir. 1971):

> There must also be an "inherent" relationship between the greater and lesser offenses, i.e., they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.

Id. at 319.

offenses serve the same legislative goals.

Id. at 717.  With the elements test adopted in Schmuck, however, the lesser offense is literally, and hence "necessarily," included in the greater.

After Schmuck, this Court in United States v. Teters, 37 M.J. 370, 375-76 (C.A.A.F. 1993), changed course by expressly abandoning the "inherent relationship" and "fairly embraced" tests for LIOs.  Noting that the language of Article 79, UCMJ, is virtually identical to Fed. R. Crim. P. 31(c) and that the former was patterned on the latter, this Court embraced the elements test for identifying LIOs within the military justice system.  See Teters, 37 M.J. at 376.[8]  Under the elements test, one compares the elements of each offense.  If all of the elements of offense X are also elements of offense Y, then X is an LIO of Y.  Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.

Although this Court drifted significantly from the Teters application of Schmuck with respect to LIOs, see, e.g., United States v. Hudson, 59 M.J. 357, 359 (C.A.A.F. 2004) ("Rather than adopting a literal application of the elements test," resolving

---

[8] Although the commentary of the 1968 MCM and each one thereafter has included the vague "or by fair implication" language, that language predates and was effectively if not formally superseded by Schmuck and Teters.

LIO issues "'by lining up elements realistically and determining whether each element of the supposed "lesser" offense is rationally derivative of one or more elements of the other offense -- and vice versa.'" (quoting Foster, 40 M.J. at 146)), that modified position is no longer seriously supportable in light of our more recent focus -- consonant with the Constitution, precedent of the Supreme Court, and the Teters line of cases[9] -- on the significance of notice and elements in determining whether an offense is a subset (and thus an LIO) of the greater offense.  See Miller, 67 M.J. at 388-89 (overruling language from Foster suggesting that an accused is on notice of an Article 134, UCMJ, LIO because every enumerated offense under the UCMJ is per se prejudicial to good order and discipline or service discrediting, and rejecting the notion of implied elements); Medina, 66 M.J. at 26-27 (recognizing that the due process principle of fair notice is met by an LIO if "it is a subset of the greater offense alleged").

### B.

The Government suggests that none of the above matters, because the elements test is merely a means to the end of fulfilling the notice requirement of the Due Process Clause, and

---

[9] For cases reiterating the Teters adoption of the elements test and applying it in the context of multiplicity, see, for example, United States v. Wheeler, 40 M.J. 242 (C.M.A. 1994); United States v. Ramsey, 52 M.J. 322 (C.A.A.F. 2000); and United States v. Dillon, 61 M.J. 221 (C.A.A.F. 2005).

12

the notice function of the elements test can be accommodated in this case by either case law or LIOs listed within the explanation sections of MCM pt. IV.

It is true that this Court in Schoolfield expressly held that indecent acts was an LIO of rape. 40 M.J. at 137. But in so holding, the Court reasoned that the service discrediting or prejudicial to good order and discipline element of indecent acts was implied in the offense of rape. Id. That reasoning was based on the logic of Foster and was expressly overruled in Miller. See Miller, 67 M.J. at 388-89. Therefore, to the extent that Schoolfield holds that indecent acts is an LIO of rape, it is no longer good law.

But, more directly, the Government's suggestion that this is merely a matter of due process fails in the face of Article 79, UCMJ. This case implicates not only the question whether this Appellant was on notice that he would need to defend against indecent acts, but also the interpretation and application of Article 79, UCMJ, a provision enacted under the constitutional authority of Congress to provide rules for the government and regulation of the armed forces, U.S. Const. art. I, § 8, cl. 14. As we noted in Teters, the language of this article is substantially identical to language the Supreme Court has interpreted to require the elements test in the civilian

13

context, 37 M.J. at 375-76, and the same interpretation was applied in the military justice context, id. at 376.

Moreover, suggesting that listing a criminal offense as an LIO within the MCM automatically makes it one, irrespective of its elements, ignores the very definition of a crime. Crimes are composed of elements, and they include both a required act (actus reus) and a mental state (mens rea). See United States v. Apfelbaum, 445 U.S. 115, 131 (1980); 1 Wayne R. LaFave, Substantive Criminal Law § 1.2, at 11 (2d ed. 2003). Save a few minor exceptions, federal crimes are solely creatures of statute. See Liparota, 471 U.S. at 424; LaFave, § 2.1(c), at 107. Determinations as to what constitutes a federal crime, and the delineation of the elements of such criminal offenses -- including those found in the UCMJ -- are entrusted to Congress. See Liparota, 471 U.S. at 424; 1 Charles E. Torcia, Wharton's Criminal Law § 10, at 37-38 (15th ed. 1993).

> [There is no] basis for the proposition that the President may create an offense under the Code. To the contrary, our fore-fathers reposed in the Congress alone the power "To make Rules for the Government and Regulation of the land and naval Forces." [U.S. Const. art. I, § 8.] The President's power as Commander-in-Chief does not embody legislative authority to provide crimes and offenses.

United States v. McCormick, 12 C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960) (citations omitted).

It stands to reason, then, that an LIO -- the "subset"

United States v. Jones, No. 09-0271/AF

"necessarily included" in the greater offense -- must be determined with reference to the elements defined by Congress for the greater offense.  And that is indeed how courts have proceeded.  See, e.g., Carter v. United States, 530 U.S. 255, 259 (2000) ("[Section] 2113(b) requires an element not required by § 2113(a) -- three in fact -- and therefore is not a lesser included offense of § 2113(a)."); United States v. Browner, 937 F.2d 165, 168 (5th Cir. 1991) (applying elements test to find "assault with a dangerous weapon" under 18 U.S.C. § 113(c) not an LIO of "voluntary manslaughter").

In short, the case before us involves an analysis of the substantive law promulgated by Congress with respect to lesser included offenses and does not call on us to address the full contours of presidential power, including the power of the President as commander in chief.  But see United States v. Jones, __ M.J. __ (4, 7-18) (C.A.A.F. 2010) (Baker, J., dissenting).  In particular, this opinion does not -- and should not be read to -- question the President's ability to list examples of offenses with which one could be charged under Article 134, UCMJ.  See generally MCM pt. IV, paras. 61-113 (2008 ed.).  The President in those instances is not defining offenses but merely indicating various circumstances in which the elements of Article 134, UCMJ, could be met.  The President's listing of offenses under Article 134, UCMJ, is

15

persuasive authority to the courts, see Miller, 67 M.J. at 388

n.5 (citation omitted) (noting that "MCM explanations of

offenses are not binding on this Court" and are instead

"generally treated as persuasive authority, to be evaluated in

light of this Court's precedent"); United States v. Gonzalez, 42

M.J. 469, 474 (C.A.A.F. 1995) (citing United States v.

Hemingway, 36 M.J. 349, 351 (C.M.A. 1993)), and offers guidance

to judge advocates under his command regarding potential

violations of the article.

To be perfectly clear, this case concerns lesser included

offenses, not the constitutionality of Article 134, UCMJ.  For

although the terms Congress chose for the article are broad, see

generally Parker v. Levy, 417 U.S. 733, 756 (1974) ("For the

reasons which differentiate military society from civilian

society, we think Congress is permitted to legislate both with

greater breadth and with greater flexibility when prescribing

the rules by which the former shall be governed than it is when

prescribing rules for the latter."), what is general is made

specific through the language of a given specification.  The

charge sheet itself gives content to that general language, thus

providing the required notice of what an accused must defend

against.  Presidential narrowing of the "general" article

through examples of how it may be violated is part of why

Article 134, UCMJ, is not unconstitutionally vague.  Id. at 753-56.

Moreover, we must take care to avoid the conflation of two unrelated propositions:  the President's ability to suggest ways in which Article 134, UCMJ, might be charged, which we do not take issue with, and the ability of the President to declare that a particular example of an Article 134, UCMJ, offense is a lesser included offense of something Congress defined as a criminal offense in a separate section of the UCMJ, and which is defined by elements that have no common ground with Article 134, UCMJ.  This case addresses only the latter proposition.

Nor does this case either decide or foreclose the ability of Congress to consider whether authority to define LIOs should or could be delegated to the executive, and, if so, what standards and limitations should apply to any such delegation. Cf. Solorio v. United States, 483 U.S. 435, 446 (1987) (noting that "Congress, and not the Executive, was given the authority to make rules for the regulation of the Armed Forces"). Congress has delegated specific authority to the President with respect to designated areas of court-martial practice.  See, e.g., Article 36, UCMJ, 10 U.S.C. § 836 (2006) (authorizing the President to prescribe rules of pretrial, trial, and post-trial procedure and evidence); Article 56, UCMJ, 10 U.S.C. § 856 (2006) (authorizing the President to prescribe maximum limits of

17

punishment).  But Congress has not delegated to the President a general authority to determine whether an offense is "necessarily included" in the charged offense under Article 79, UCMJ.[10]  Cf. Ellis v. Jacob, 26 M.J. 90, 92 (C.M.A. 1988) ("[T]he President's rule-making authority does not extend to matters of substantive military criminal law.").

### C.

Interpreting Article 79, UCMJ, to require the elements test for LIOs has the constitutionally sound consequence of ensuring that one can determine ex ante -- solely from what one is charged with -- all that one may need to defend against.  This practice is surely preferable and more sound than judges at the trial and appellate levels making subjective judgments as to whether elements line up "'realistically.'"  Hudson, 59 M.J. at 359 (quoting Foster, 40 M.J. at 146).  To the extent any of our post-Teters cases have deviated from the elements test, they are overruled.

Requiring this notice places no constraints on the viability of Article 134, UCMJ, offenses, or the flexibility of Article 134, UCMJ, for commanders.  Nothing here prevented the

---

[10] The absence of reference to either the President or presidential authority within the text of Articles 79 or 134, UCMJ, stands in stark contrast to the specific and reticulated grant of authority to the President, 50 U.S.C. § 1702, within the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1707 (2006).

Government from charging indecent acts in addition to rape --
the government is always free to plead in the alternative.  See
United States v. Medley, 33 M.J. 75, 76 (C.M.A. 1991) (quoting
United States v. Heyward, 22 M.J. 35, 37 (C.M.A. 1986)).  Nor is
there anything to prevent the government, with the accused's
consent, from amending the charge sheet in the course of trial
to allege a less serious or different offense than the one
originally charged.  See R.C.M. 603(d).  Finally, the accused is
always free to plead "not guilty to an offense as charged, but
guilty of a named lesser included offense; [or] guilty with
exceptions, with or without substitutions, not guilty of the
exceptions, but guilty of the substitutions, if any."  R.C.M.
910(a).

Regardless of what could have been done here, applying the
elements test to the case as it is before us, the elements of
rape do not include all (or indeed any) of the elements of
indecent acts, and the instruction on the latter in this case --
which included the element that "under the circumstances, the
conduct of the accused was to the prejudice of good order and
discipline in the armed forces or was of a nature to bring
discredit upon the armed forces" -- was in error.[11]  And the

---

[11] In the context of a plain error analysis, Appellant has the
burden of demonstrating that:  (1) there was error; (2) the
error was plain or obvious; and (3) the error materially
prejudiced a substantial right.  See United States v. Powell, 49

variance between what Appellant was charged with and what he was convicted of was fatal:  Appellant was charged with rape, and nothing in that charge put Appellant on notice that he also needed to defend against indecent acts.  The Specification of Charge I must therefore be set aside.

### III.  Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed as to the finding of indecent acts under Charge I and the sentence.  The findings of guilty to Charge I and its Specification are set aside, and that Charge and Specification are dismissed.  The remaining findings of guilty are affirmed.  The record is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence or, if it determines appropriate, for the ordering of a rehearing on sentence.

---

M.J. 460, 463-65 (C.A.A.F. 1998).  Under the first prong, the military judge erred in giving the instruction for the reasons set forth above.  With respect to the second prong, the error was "plain and obvious," at least in the sense that those words are legal terms of art, because Schoolfield was no longer good law after Miller and McCracken.  Cf. United States v. Harcrow, 66 M.J. 154, 159 (C.A.A.F. 2008).  Regarding the third prong, conviction of an offense not charged was clearly prejudicial in the context of plain error analysis where, as here, the case was not tried on a theory of indecent acts and the military judge did not introduce the subject of indecent acts into the case until after the parties had completed their presentation of the evidence.

United States v. Jones, No. 09-0271/AF

BAKER, Judge (dissenting):

I agree with the majority opinion that "[t]he due process principle of fair notice mandates that 'an accused has a right to know what offense and under what legal theory' he will be convicted; an LIO [lesser included offense] meets this notice requirement if 'it is a subset of the greater offense alleged.'" United States v. Jones, __ M.J. __ (6) (C.A.A.F. 2010) (quoting United States v. Medina, 66 M.J. 21, 26-27 (C.A.A.F. 2008)). I also agree that "'[t]he Constitution requires that an accused be on notice as to the offense that must be defended against, and that only lesser included offenses that meet these notice requirements may be affirmed by an appellate court.'" Id. at __ (7) (quoting United States v. Miller, 67 M.J. 385, 388 (C.A.A.F. 2009)).

The dispute in this case is threefold. First, is whether the elements test from Schmuck v. United States, 489 U.S. 705, 716-18 (1989), is the exclusive means by which fair notice may be provided in the military context where offenses charged under clauses 1 or 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), serve as lesser included offenses. Heretofore, notice has been provided by reference to elements promulgated in the Manual for Courts-Martial (MCM) by the President and through case law. See e.g., United States v. Carr, 65 M.J. 39, 40 (C.A.A.F. 2007) (concluding that assault

consummated by a battery is a lesser included offense to indecent assault under the MCM); United States v. McKeel, 63 M.J. 81, 82 (C.A.A.F. 2006) (upholding conviction for indecent assault as a lesser included offense for rape under the MCM).

Going forward, however, the majority has concluded that in the military "an LIO . . . must be determined with reference to the elements defined by Congress for the greater offense." __ M.J. at __ (14-15). Specifically, the exclusive means of notice regarding lesser included offenses is pursuant to the Schmuck elements test in which: "one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense." Schmuck, 489 U.S. at 716. As a result, because the statutory elements of clauses 1 and 2 of Article 134, UCMJ, of course, do not and cannot line up with any of the enumerated offenses, the majority's decision means that offenses charged under clauses 1 and 2 of Article 134, UCMJ, can never be lesser included offenses to any other punitive article in the UCMJ, or with respect to clause 3 of Article 134, UCMJ. Additionally, the eighteen enumerated offenses for which the President in the MCM has expressly promulgated lesser included offenses under Article 134, UCMJ,[1] are invalid.[2]

---

[1] MCM pt. IV, paras. 18.d(1)(f), 18.d(2)(d), 18.d(3)(c) 19.d(2)(a), 30a.d, 32.d(1)(b), 35.d(2)(c), 36.d, 38.d(1)(d),

Second, if the statutory elements are the only basis by which an accused may receive fair notice of any lesser included offense, and the statutory elements of Article 134, UCMJ, do not adequately describe any lesser offense within the UCMJ, the majority does not explain how those same elements can provide fair notice of a charged offense under clauses 1 and 2 of Article 134, UCMJ, without resorting to information derived from outside the statutory elements.  In other words, by implication the majority's analysis also challenges clauses 1 and 2 of Article 134, UCMJ, themselves.  Nonetheless, the majority does not address this issue, nor does it follow the implications of its analysis to their logical conclusion.  However, given the role Article 134, UCMJ, has heretofore played in the structure of military justice and in providing commanders a flexible tool to uphold good order and discipline, this issue should not be left unresolved.

---

38.d(2)(b), 40.d(1), 41.d(1)(b), 41.d(2)(a), 43.d(2)(c), 43.d(3)(c)-(d), 44.d(1)(c)-(d), 44.d(2)(b), 45(d)(1)(b), 47.d(6), 49.d(1), 51.d(2)(b), 53.d(1), 55.d(2), 56.d(1) (2008 ed.).

[2]  By the same reasoning, the majority has also eliminated the issue of multiplicity and claims of preemption for clauses 1 and 2 of Article 134, UCMJ, without comment.  Further, if clauses 1 and 2 of Article 134, UCMJ, are no longer lesser included offenses for any enumerated offense, the government may well address evidentiary contingencies by charging a violation of clauses 1 and 2 of Article 134, UCMJ, in every case in which it charges a violation of an enumerated offense.

Finally, the majority's analysis fails to account for the constitutional distinctions between civilian law and practice and military law and practice.  In particular, the majority does not address the unique role and place of Article 134, UCMJ, in military discipline, command, and justice and in the context of the President's independent authority as commander in chief. Whatever one might think of Article 134, UCMJ, the Supreme Court has upheld its use, but only because fair notice of what is criminal is derived from custom, practice, and presidential directive, and not with reference to the legislatively defined elements of the article.  See Parker v. Levy, 417 U.S. 733, 751–53 (1974).  It might be better legal policy were the Congress to use its Article I authority to define the elements to each Article 134, UCMJ, offense and each Article 134, UCMJ, lesser included offense, but that is not the same as saying the President does not have the authority to do so as commander in chief.  In fact, he has exercised this authority for sixty years under the UCMJ and before that under the Articles of War. Congress has remained silent in the face of such historic practice.

Discussion

The majority concludes that because "[d]eterminations as to what constitutes a federal crime, and the delineation of the elements of such criminal offenses -- including those found in the UCMJ -- are entrusted to Congress," the only means by which an accused may be placed on fair notice of a lesser included offense (and presumably the greater offense) is through reference to statutorily defined elements.  __ M.J. at __ (14) (C.A.A.F. 2010).  I am skeptical this is a required legal result in the military constitutional context, rather than a legal policy preference for a formulaic test, such as the test set out in Schmuck, over the less certain standard of "fair notice".

Article 134, UCMJ, does not fit neatly, if at all, into the ordinary framework for construing criminal statutes.  First, Article 134, UCMJ, is unique to the military justice system. This is evident with reference to the statutory elements, which address service discrediting conduct and prejudice to good order and discipline.  The point is driven home in case law.  Parker, 417 U.S. at 748-49 (recognizing that Article 134, UCMJ, must be gauged by "an actual knowledge and experience of military life, its usages and duties"); United States v. Mason, 60 M.J. 15, 20 (C.A.A.F. 2004) ("[The appellant's] conduct in receiving those images [of child pornography] on his government computer can constitutionally be subjected to criminal sanction under the

5

uniquely military offenses embodied in clauses 1 and 2 of Article 134.").

Second, Article 134, UCMJ, is intended to provide the commander with the flexibility to provide for the good order and discipline of the armed forces and thus is not just directed toward the punishment of traditional criminal offenses defined by traditional statutory elements.  See Parker, 417 U.S. at 745 ("And to maintain the discipline essential to perform its mission effectively, the military has developed what 'may not unfitly be called the customary military law' or 'general usage of the military service.'") (quoting Martin v. Mott, 12 Wheat. 19, 35 (1827)); MCM pt. IV, para. 60.c(2)(a) (2008 ed.) ("[Clause 1] refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense.").  For these reasons, Article 134, UCMJ, reaches conduct that would not necessarily be criminal if committed by a civilian.  E.g., Parker, 417 U.S. at 739, 760-61 (holding that making defamatory and provoking statements to enlisted personnel in the hope of convincing them to disobey orders can be criminalized under Article 134, UCMJ); United States v. Rogers, 54 M.J. 244, 256-57 (C.A.A.F. 2000) (holding that the prohibition on fraternization with subordinates within appellant's command was not vague under Articles 133 and 134, UCMJ).  It is also intentionally broad so

as to address the myriad of actions in the military context that cannot be foreseen, but would nonetheless undermine good order and discipline or bring discredit to the armed forces, like jumping from a vessel or impersonating an officer.  This is a critical point.

Congress intended clauses 1 and 2 to be read broadly. Indeed, the two clauses, and their antecedent clauses in the Articles of War, have been read that way throughout more than two hundred years of U.S. military practice.  See William Winthrop, Military Law and Precedents 720 (2d ed. Government Printing Office 1920) (1886); Parker, 417 U.S. at 745-56.  In light of the broad language of Article 134, UCMJ, this Court and ultimately the Supreme Court have long held that custom and constructions by military authorities must narrow, and have narrowed, the reach of that language.  Parker, 417 U.S. 753; see also United States v. Ashby, 68 M.J. 108, 118 (C.A.A.F. 2009). Heretofore, the narrowing of the language was usually provided by the President's promulgation of Article 134, UCMJ, delineated offenses and lesser included offenses.  Moreover, where the President, as commander in chief, or his subordinates have reached too far, this Court has not hesitated to say so, consistent with the cautionary injunction of Parker.  See, e.g., United States v. Jordan, 57 M.J. 236, 239-40 (C.A.A.F. 2002)

7

(concluding that the accused could not be charged with violating Article 134, UCMJ, for leaning on a civilian boat in a marina).

The dilemma, of course, is that because Article 134, UCMJ, is unique to military justice and discipline and was drafted in an intentionally broad manner to give the commander flexibility, it uses generalized statutory elements. The Article 134, UCMJ, elements do not and cannot line up in a literal sense with the statutory elements of the enumerated offenses, which were codified in specific criminal element language.[3] Congress did not intend to do the same with clauses 1 and 2 of Article 134, UCMJ. The general nature of the article's elements makes it more difficult for servicemembers to ascertain what is and is not criminal under Article 134, UCMJ. Thus, where Article 134, UCMJ, is concerned it is the commander as convening authority, and ultimately the President as commander in chief, who gives meaning to these elements and essentially defines their meaning in context. As a result, Article 79, UCMJ, 10 U.S.C. § 879 (2006), does not address the question as to how the enumerated articles and Article 134, UCMJ, as a lesser included offense relate.

---

[3] "[U]nlike federal offenses, military offenses are not exclusively the product of statutes. Countless military offenses derive their elemental essence from regulations or orders, from customs of service, or from traditional military crimes that have emerged from a military common law-like process." United States v. Weymouth, 43 M.J. 329, 335 (C.A.A.F. 1995) (citing Article 134, UCMJ).

United States v. Jones, No. 09-0271/AF

   The Congress has left it to the President to define clauses 1 and 2 of Article 134, UCMJ, and heretofore he has done so in a manner that necessarily includes certain conduct under Article 134, UCMJ, as lesser included offenses to enumerated offenses. Binding or not, the commander in chief's view as to how conduct listed under Article 134, UCMJ, necessarily also implicates service discredit and good order and discipline should be persuasive. It also can provide fair notice as to how clauses 1 and 2 of Article 134 relate to the enumerated articles with regard to lesser included offenses.

   Thus, while it is a constitutional truism that only Congress can define crimes, and the elements of crimes, it does not necessarily follow that the President is precluded from giving those elements meaning in the military context where the President acts as commander in chief and Congress has not otherwise expressly precluded such exercise of authority.[4] Nor has the Supreme Court ruled otherwise. Since the UCMJ's inception, the President has done just that by delineating

---

[4] In United States v. Foster, this Court read into the enumerated offenses legislative text that was not there, namely implied elements for good order and discipline. 40 M.J. 140, 143 (C.M.A. 1994), overruled in part by United States v. Miller, 67 M.J. 385, 389 (C.A.A.F. 2009). An Article 134, UCMJ, lesser included offense is different. The President as commander in chief gives meaning to Article 134, UCMJ, as the Supreme Court and Congress intended, and indicates where an offense under Article 134, UCMJ, might serve as a lesser included offense to an enumerated offense.

9

offenses within Article 134, UCMJ.[5]  In defining Article 134,

UCMJ, he has also delineated offenses as lesser included

offenses for enumerated offenses.  That is what Congress

intended with respect to Article 134, UCMJ.  Schmuck, a 1989

case occurring in a civilian context, did not abrogate this

authority either expressly or by implication.

Indeed, the Supreme Court has recognized the President's

authority to narrow the meaning of Article 134, UCMJ, and has

validated this practice.  Parker, 417 U.S. at 753, 760-61

(upholding a conviction for making defamatory and provoking

statements, which was a sub-offense under Article 134, UCMJ,

described in the MCM).  Moreover, the Court has insisted upon

such practice as a constitutional requirement given the broad

statutory elements contained in Article 134, UCMJ.  Id. at 752-

53.  And, of course, the Constitution in a specified context and

the courts more generally recognize that while the Constitution

most certainly applies to members of the military it may apply

differently depending on the context.  Id. at 758 ("The

fundamental necessity for obedience, and the consequent

necessity for imposition of discipline, may render permissible

within the military that which would be constitutionally

---

[5] Arguably, the President's duty to "take care that the Laws be faithfully executed" is also implicated, for in the absence of congressional enumeration, there is no other way to give meaning to the Article 134, UCMJ, elements without executive implementation. U.S. Const. art. II, §3.

impermissible outside it."); U.S. Const. amend. V ("No person shall be held to answer for a capital . . . crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces . . . ."). Is not the application of Article 134, UCMJ, as a delineated offense or a lesser included offense one of those circumstances?

Recognition of this distinction is particularly compelling in an area where the President and the Congress possess specific and additional constitutional authority over the military instrument that extends beyond the legislative authority to define crimes. Among other things, the Congress has the power "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8. The President is, of course, the "Commander in Chief of the Army and Navy of the United States," granting him some measure of authority to maintain good order and discipline within the military. U.S. Const. art. II, § 2. The President's authority is not limited to Article 36, UCMJ, 10 U.S.C. § 836 (2006), granting the President the power to prescribe "[p]retrial, trial, and post-trial procedures." If the President's power were so limited, then he could hardly promulgate the Article 134, UCMJ, offenses listed in the MCM, and Congress would hardly have tolerated and acquiesced to such a practice for sixty years.

To apply the paradigm from Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 635 (1952) (Jackson, J., concurring), the President's authority is at its zenith when he acts pursuant to Article 36, UCMJ, because he operates with his own authority as well as that expressly delegated by the Congress.  But Article 36, UCMJ, does not purport to extinguish authority the President as commander in chief might otherwise assert over military discipline through operation of Article 134, UCMJ, and the delineation of Article 134, UCMJ, elements in the MCM.  Military discipline is an area of concurrent authority between Congress and the President, and therefore Congress's acquiescence has allowed the President to take on more responsibility in clarifying the meaning of Article 134.  Id. at 637.[6]  Such acquiescence may be particularly instructive and valid where the President is exercising a parallel constitutional authority.

There is also parallel precedent for such constitutional practice.  In the area of foreign affairs, for example, Congress has delegated to the President the authority to define and enforce the criminal sanctions generally authorized by Congress

---

[6]  See United States v. Rorie, 58 M.J. 399, 411 (C.A.A.F. 2003) (Effron, J., with whom Baker, J., joined, dissenting) (noting that since Congress did not act when the Department of Defense submitted comprehensive legislation that did not address abatement, it "provide[d] additional grounds for concluding that the proponents of changing our interpretation of the UCMJ have not surmounted the hurdle imposed by the doctrine of stare decisis").

in the International Emergency Economic Powers Act (IEEPA). 50
U.S.C. §§ 1701-1707 (2006). In this foreign affairs context, it
is the President who determines to whom, to what, and to where
the criminal sanctions will apply. See Dames & Moore v. Regan,
453 U.S. 654, 670-71 (1981). Fair notice of these criminal
sanctions comes not in the form of statutory elements, but
through the vehicles of presidential executive orders and the
actions of the Office of Foreign Asset Control (OFAC), as posted
on its website.

Of course, the predicate for Presidential action was
express in IEEPA; whereas here it is implied, derived as it is
from the President's command authority and Congress's
understanding of and acquiescence in the manner in which that
authority has been exercised. That is the difference between
what is generally referred to as Category I and Category II of
the Youngstown paradigm.[7] But that does not place the

---

[7] In Justice Jackson's concurrence in Youngstown, he laid out
three categories of how presidential power may be viewed
depending on congressional action. Youngstown, 343 U.S. at 635-
38. In Category I, "[w]hen the President acts pursuant to an
express or implied authorization of Congress, his authority is
at its maximum, for it includes all that he possesses in his own
right plus all that Congress can delegate." Id. In Category
II:

> [w]hen the President acts in absence of either a
> congressional grant or denial of authority, he can
> only rely upon his own independent powers, but there
> is a zone of twilight in which he and Congress may
> have concurrent authority, or in which its

President's action into Category III of the paradigm as the majority implies.  Thus, contrary to the majority's assertion, while Congress alone can legislate crimes and define the elements, it is the President in certain contexts who gives substantive meaning to the general elements of the offense in military practice.  Given the nature and importance of the constitutional interests at stake for all three branches, if sixty years of law and practice are to change with regard to the application of Article 134, UCMJ, it should be done on the basis of an exercise of authority more contextually definitive than Schmuck.

In the military context, it would seem that Article 134, UCMJ, might well be fleshed out in the same manner as the crimes under IEEPA are given specific meaning and application, which is to say by the President.  This is certainly what has happened to date in both the promulgation of Article 134, UCMJ, delineated offenses and Article 134, UCMJ, lesser included offenses for enumerated offenses.  However, the majority has concluded as a

---

distribution is uncertain.  Therefore, congressional inertia, indifference or quiescence may sometimes, at least as a practical matter, enable, if not invite, measures on independent presidential responsibility.

Id. at 637.  Finally, in Category III, "[w]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter."  Id.

14

matter of constitutional law that while the Congress could delegate this authority to the President it has not done so and Schmuck necessitates the conclusion that the only way to provide fair notice of a criminal offense is through the promulgation of legislative elements. __ M.J. at __ 11, 17. Moreover, in the view of the majority, the President's authority as commander in chief is merely persuasive, or more accurately, unpersuasive, notwithstanding the President's exercise of this authority in concert with Congress's Article I authority since 1951. Nor does the majority explain what has happened between 1989, when Schmuck was decided, and today that would change this Court's approach to Article 134, UCMJ, lesser included offenses.

That is not to say that it would not be better for Congress to define the elements of every Article 134, UCMJ, offense if it were possible to do so. Nor does it mean that it would not be better for Congress to expressly delegate its authority to the President to define criminal conduct as it has done with IEEPA (or for that matter expressly precluding the President from doing so). Certainly, from the standpoint of authority, the President acts with more certain strength when he acts with the express will of the Congress and his own authority. That is the first category of the Youngstown paradigm. Here the President acts in the gray zone of Category II of Youngstown.

In either zone the President's authority as commander in chief is not unlimited and unchecked. The President cannot make rape a lesser included offense of forgery. Clauses 1 and 2 of Article 134, UCMJ, must be read, interpreted and applied in a manner consistent with Congress's exercise of its Article I authority and this Court's interpretation of the Constitution and other law. But the President's authority does factor into the analysis. Clauses 1 and 2 of Article 134, UCMJ, are meaningless without it.

In short then, the majority has determined, based on Schmuck alone, that the only manner in military practice by which constitutional notice of a lesser included offense can be provided is through application of a literal statutory elements test. As a result, all offenses in the military that were heretofore predicated on Article 134, UCMJ, as lesser included offenses to enumerated offenses are invalid and will remain so unless Congress provides delineated Article 134, UCMJ, offenses with statutory elements that align with the enumerated offenses. This Congress cannot do if it intends for clauses 1 and 2 of Article 134, UCMJ, to serve as a flexible commander's tool addressing good order and discipline and service discrediting conduct as delimited by the commander in chief.

Of course, for that same reason, the majority's decision puts in doubt the application of Article 134, UCMJ, itself. If

statutory elements are the only means by which an accused might receive fair notice of a lesser included offense; then why are statutory elements not the only means by which an accused might receive fair notice of any offense. Article 134, UCMJ, does not provide such notice. Rather, the practice, custom, case law, and the commander in chief's directives provide notice of what is criminal under Article 134, UCMJ. Parker, 417 U.S. at 751-53. "Decisions of this Court during the last century have recognized that the longstanding customs and usages of the services impart accepted meaning to the seemingly imprecise standards of [Articles] 133 and 134." Id. at 746-47.

> The effect of these constructions of Arts. 133 and 134 by the Court of Military Appeals and by other military authorities has been twofold: It has narrowed the very broad reach of the literal language of the articles, and at the same time has supplied considerable specificity by way of examples of the conduct which they cover.

Id. at 754. However, under the Court's reasoning today, as a matter of logic it appears that custom, practice, and case law cannot provide fair notice; only the elements will do. Thus, unless one finds specific notice in the actual statutory text of Article 134, UCMJ, that conduct is criminal it would seem to falter for the same reason that Article 134, UCMJ, delineated offenses cannot be lesser included offenses for enumerated offenses.

17

## Conclusion

In this case, Appellant was charged with rape, but found guilty of indecent acts with another.  Given that I have concluded the President has the authority to delineate offenses under Article 134, UCMJ, as lesser included offenses to the enumerated offenses, indecent assault was a lesser included offense of rape.  At the time of Appellant's court-martial, committing an indecent act was a possible lesser included offense of indecent assault, both of which were delineated under Article 134, UCMJ.  In this case, the facts fit and Appellant, by his own trial admission, was on fair notice that committing an indecent act was a lesser included offense of rape through operation of Article 134, UCMJ.  Therefore, I would affirm the decision of the United States Air Force Court of Criminal Appeals and respectfully dissent.